IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**SPRINGDALE SCHOOL DISTRICT**                                                     **PLAINTIFF**

V.                                      **CASE NO. 5:24-CV-05131**

**E.C. and M.H.,**
**as Parents of E.H., a Minor**                                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Plaintiff Springdale School District's Brief Appealing the IDEA Due Process Hearing Decision in favor of Defendants E.C. and M.H. ("Parents"), as Parents of E.H. (Doc. 32). The District seeks the review and partial reversal of the findings and decision of the hearing officer in a due process hearing brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. Parents argue the appeal is moot and request judgment on the record. The Court, having reviewed all pertinent briefing and exhibits, agrees with Parents that the case is moot and that no exception to mootness applies. As there is no justiciable case or controversy before the Court, both the District's request for review and reversal and Parents' request for judgment on the record are **DENIED**. As Parents were the prevailing party in the underlying litigation, however, Parents have a live counterclaim for attorneys' fees and may move for an award.

### I.  BACKGROUND

E.H. was diagnosed with autism in 2016 prior to starting elementary school. (Doc. 31-1, pp. 715–32). In 2018, she began attending Arkansas Virtual Academy Charter School as a kindergartner and received an Individualized Education Plan ("IEP"). *Id.*, pp. 695–704). At that time, she underwent cognitive, achievement, behavioral, and autism-specific testing

1

with an in-person administrator. *Id*. pp. 678–81. In August 2019, E.H. transferred to home schooling for her first grade year. *Id.* p. 555. In 2020, she was enrolled in the Springdale School District as a virtual student in the Don Tyson School of Innovation due to the COVID-19 pandemic. *Id*.; Doc. 32 p. 2. Because E.H. had an existing IEP, the IEP Committee conducted a review of E.H.'s existing data (an "Existing Data Review") to develop her October 30, 2020, IEP, which was amended in February and April of 2021. *Id*. pp. 444, 2130.

In 2021, E.H. began the third grade at the School of Innovation. Parents requested—and the District recommended—that she transition to in-person schooling in a September 20, 2021, meeting, which she did as a student at Hunt Elementary. *Id.* p. 352.

The District conducted a reevaluation of E.H. on October 18, 2021, as she transitioned to face-to-face instruction. That reevaluation relied heavily on results from E.H.'s 2018 evaluation, *id*. pp. 456–57, reported information from her prior year virtual teacher (some items which were based on a "guess[ ]" rather than "a direct observation of her skills"), *id*. pp. 459–60, and included no direct observation by the school psychologist, *id.* p. 1553. The school psychologist noted that some requested components of the evaluation were unable to be obtained due to E.H.'s "move from virtual to face-to-face" and that the "information should be viewed with caution." *Id*. pp. 457, 461.

The District developed a new IEP for E.H. on October 21, 2021, based on the reevaluation, and her goals from her prior IEP were carried over (continued). *Id.* p. 346. The IEP was amended again on November 12, 2021, *id*. p. 313, and on March 4, 2022, *id*. p. 304. During the March 2022 IEP, E.H.'s goals were again continued. *Id*. pp. 285–

296, 2134. During her fourth grade year (2022–2023), E.H.'s IEP was amended on January 12, 2023 and May 9, 2023. *Id*. pp. 207–08, 237–38. All seven of E.H.'s fourth-year goals were continued. *Id*. p. 2135. During her fifth-grade year, E.H. stopped attending school due to a series of events that left her with bruises and that the parties dispute. *Id*. at 2136-2137. E.H. was scheduled for an annual review on October 9, 2023, but Parents did not attend.

On November 9, 2023, Parents filed a Due Process Complaint with the Arkansas Department of Education against the District. After a four-day hearing, the hearing officer found in favor of the District on an alleged substantive violation of the IDEA as to E.H.'s fifth-grade year, as Parents refused to attend the IEP meeting. *Id*. p. 2144. The hearing officer also found that reporting E.H.'s progress through IEP meetings rather than through report cards did not constitute a procedural violation. *Id*. p. 2141.

The District appeals the hearing officer's decision finding that the District committed substantive violations of the IDEA during E.H.'s third- and fourth-grade years. Although neither party disputes that the October 18, 2021, reevaluation fell outside of the applicable statute of limitations for Parents' due process challenge, the hearing officer's opinion considered this reevaluation as historically significant for the purpose of assessing the sufficiency of E.H.'s later third and fourth-grade year IEPs which did fall within the limitation period. *Id*. at 2141–43. The hearing officer found that the reevaluation was deficient under guidance issued by the Office of Special Education Policy, and in part due to the school psychologist's heavy reliance on prior evaluations and observations which were conducted almost entirely virtually or when E.H. was homeschooled. *Id*. pp. 2143–44. Because E.H.'s third and fourth grade IEPs quoted heavily from the 2018

evaluation and the October 18, 2021 reevaluation, her programming decisions were made largely on an assessment performed when E.H. was three years old. *Id*. The hearing officer also found that the District unilaterally placed E.H. at Hunt Elementary without a proper evaluation or contemplating any other placement option, thus violating the IDEA's requirement that a child receive a free appropriate public education in the least restrictive environment. *Id*. pp. 2143-44.

The hearing officer ordered that the District pay for an independent comprehensive evaluation of E.H.; that the District pay for a functional behavioral analysis and behavior plan conducted by a Board-Certified Behavior Analyst; that E.H.'s IEP team meet to review these evaluations; and that the IEP team develop an IEP for the 2024–2025 school year with placement at a District school other than Hunt Elementary. *Id*. p. 2149. The District voluntarily complied with the hearing officer's decision, and did not seek a stay in this Court. *See* Doc. 32 p. 11

## II.  LEGAL STANDARD

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (citing *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)); U.S. Const. art. III, § 2, cl. 1. When the "issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot.'" *Id*. (citations omitted). Because "federal judges are not counselors or academics" and "are not free to take up hypothetical questions that pique a party's curiosity or their own," *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024), "[i]f an issue is moot in the Article III sense" the Court has "no

4

discretion and must dismiss the action for lack of jurisdiction." *Ali*, 419 F.3d at 723.

But there are exceptions to the mootness doctrine. A controversy qualifies for the "capable of repetition, yet evading review" exception to mootness if "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Turner v. Rogers*, 562 U.S. 431, 439–40 (2011) (cleaned up).

### III. DISCUSSION

#### A. MOOTNESS OF THE APPEAL

The District argues that this controversy remains justiciable because it falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. The Court concludes that it does not.

The District's full compliance with the hearing officer's order is dispositive. As the District itself concedes, "compliance generally moots any appeal from that order—at least where the order was not a continuing injunction and merely required [that party] to perform certain discrete acts." *Jefferson Cty. Bd. of Educ. v. Bryan M.*, 706 F. App'x 510, 513 (8th Cir. 2017). Here, the District has apparently complied with the hearing officer's order by conducting the comprehensive evaluation and behavioral analysis of E.H. and by placing E.H. at another school within the District. This Court cannot retroactively undo an evaluation, undevelop an IEP or otherwise provide the District with any relief that would alter the legal relationship between the parties. While the District contends that this would render the hearing officer's decision "unreviewable" such that "the District will be left with no remedy," it was the District's choices that now present the Court a *fait accompli* rather

than a reviewable case or controversy.[1]  The District "could have sought, but did not seek, expedited review or an injunction pending appeal."  *Iowa Prot. and Advoc. Servs. v. Tanager, Inc.*, 427 F.3d 541, 544 (8th Cir. 2005).  Although the District gestures at the fact that the Court may fashion the relief it deems appropriate, the District does not suggest—nor can the Court contemplate—any relief beyond the advisory opinion the District seems to request with respect to the October 2021 reevaluation.  But the hearing officer's assessment as to that reevaluation was of "historic[ ] significance" only to the evaluation of the later IEPs, *see* Doc. 31-1 p. 2142, and the narrow relief ordered by the hearing officer was cabined to new assessments of E.H. and a new placement.  The hearing officer did not issue a decision on, nor can the court review, the District's reevaluation process.

Nor are the issues here of the sort that are likely to repeat but evade review  The District's briefing is unclear on this point, but appears to argue that the issues in this case are likely to rearise between the parties because reevaluations are required under the IDEA every three years, and argues that because the thrust of the hearing officer's opinion was that the reevaluation was improper, a similar dispute is likely to occur in the future with E.H.  The District further argues that they are likely to confront this same legal issue "for other students enrolled at the District."  (Doc. 34, p. 6).

The District's argument is unconvincing.  The deficiencies in E.H.'s third- and fourth-grade IEPs arose from a perfect storm factual scenario that is unlikely to reoccur in the future.  Those IEPs were deficient because of a series of events that involved E.H.

---

[1] The District contends that the "evading review" element is met because "the District was Ordered by this Court to provide Parents with relief that the District contends she is not entitled to receive." (Doc. 34, p. 5).  It is unclear what the District is referring to here, as the parties did not apply for—nor did the Court order—any preliminary relief in this case.

6

being evaluated prior to starting school, her initial IEP relying on those evaluations due to her participation in class in a virtual setting, her transfer to home-school and then to the District, and a global pandemic that prevented the full series of testing that even the school psychologist desired at the time. Because the District has fully complied with the hearing officer's decision, however, the same issue is unlikely to reoccur in the future—E.H. has now received a comprehensive reevaluation, a functional behavioral analysis, and a behavior plan, so future IEPs and reevaluations will not be tainted with the same issues as those prior to the due process hearing. As to the District's argument that the same legal issue may arise for other students in the District, they could be correct—but for the exception to mootness to apply without a class action, there must be a reasonable expectation that the *same* action will occur between the *same* parties, not with another set of persons not presently before the Court. *Weinstein*, 423 U.S. at 149. An advisory opinion might very well be convenient for the District to police the bounds of what is and is not permissible in the reevaluation process. But the District's desire for convenience does not transform the instant case into a justiciable controversy.

## B. MOOTNESS OF PARENTS' COUNTERCLAIM FOR FEES

The Court also finds that Parents' counterclaim for attorneys' fees remains live even though the Court has no jurisdiction over the underlying merits claims. The issue of whether a party can obtain attorneys' fees when they prevail in the underlying administrative proceeding—but later cannot have the claims adjudicated in district court on mootness grounds—has not been presented to the Eighth Circuit. However, in keeping with the bulk of authorities outside of the Eighth Circuit, the Court finds that attorneys' fees are available to Parents as the prevailing party in the administrative

7

proceeding below. As the Tenth Circuit explained in *Patrick G. ex rel. Stephanie G. v. Harrison School Dist. No.* 2, "the outcome of those administrative proceedings. . . remains in force, and it was not vacated or vitiated by the district court's dismissal on mootness grounds. Thus. . . Parents have a still-viable claim for fees, irrespective of the mootness of their underlying claims." , 40 F.4th 1186, 1211 (10th Cir. 2022); *See also Board of Educ. of Oak Park. v. Nathan R. ex rel. Richard R.*, 199 F.3d 377, 381–82 (7th Cir. 2000) (where attorneys' fees stem "solely from. . . part of the administrative hearing" "Parents' claim is sufficient to allow this court to decide whether they are prevailing parties and entitled to attorneys' fees"); *J.S. v. Westerly Sch. Dist.*, 910 F.3d 4, 9 (1st Cir. 2018) ("We note at the outset that, although the substantive question underlying the fee award is moot for the reasons discussed above, the fee-shifting issue is not. When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation.") (cleaned up); *Lauren C. ex rel. Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 373 (5th Cir. 2018) (attorneys' fees question "turns instead on a wholly independent consideration" of whether plaintiff is a prevailing party, not determination of mootness).

At the time of the hearing officer's decision, the case was not moot, and Parents had obtained "actual relief on the merits of [their] claim that materially altere[ed] the legal relationship between the parties by modifying the [District's] behavior in a way that directly benefits [Parents and E.H.]" *Neosho R-V School Dist. v. Clark*, 315 F.3d 1022, 1030 (outlining the elements for determining prevailing party status under the IDEA). Thus, Parents may bring their motion for attorneys' fees as a prevailing party in the underlying

due process hearing, but this "interest in attorney's fees, is of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990). Parents' counterclaim for attorneys' fees, on its own, cannot present a live controversy on the merits as the District suggests.

## IV. CONCLUSION

For the reasons stated herein, the District's request for review and Parents' request for judgment on the record are **DENIED** as they are moot. As the prevailing party in the underlying administrative hearing, Parents may move for attorneys' fees in this Court no later than two weeks after entry of this order.

**IT IS SO ORDERED** on this 30th day of October, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE